UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICARDO MORENO, | : | |
| Plaintiff, | : | CASE NO. 3:21-cv-783 (MPS) |
| | : | |
| v. | : | |
| | : | |
| QUELLETE, et al., | : | |
| Defendants. | : | JUNE 23, 2021 |
| | : | |

**ORDER**

Plaintiff Ricardo Moreno, incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names nine defendants, Lieutenant Quellete, Disciplinary Hearing Officer Perez, and Correctional Officers Canales, Otero, Hinckley, Sullivan, Duggan, Crerison, Ramirez, and Quirion.[1] The plaintiff contends that the defendants violated his First, Fourth, and Fourteenth Amendment rights. He seeks damages as well as injunctive relief.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner

---

[1] Within his Statement of Facts, the plaintiff refers to Officer Crerison as Officer Crevison. The Court uses the spelling in the case caption in this order. The plaintiff lists Officer Quirion as a defendant within the body of the complaint and refers to him as defendant Quirion in his statement of facts but does not list him as a defendant in the case caption. Although Federal Rule of Civil Procedure 10(a) requires that all defendants be listed in the case caption, the Court construes the complaint liberally and considers Officer Quirion to be a defendant in this case. The Clerk shall ass Officer Quirion to the docket as a defendant.

pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.     Allegations

In January 2019, the plaintiff arrived at Carl Robinson Correctional Institution, a facility where inmates are housed in open dorms rather than cells. ECF No. 1 ¶ 1. The dorm housed 115 inmates, some of whom the plaintiff knew from other correctional facilities or from his home town. *Id.* The plaintiff knew that a few of the Latino inmates, friends he had gone to school with, were gang members. *Id.* The defendants saw him talking to known gang members and told the plaintiff that they were watching him. *Id.* The plaintiff denied being a gang member. *Id.*

On March 9, 2019, the plaintiff was called for a family visit. *Id.* ¶ 2. Although he had proof that he had been approved for a contact visit, the officer on duty said that intelligence officers told him to deny the plaintiff a contact visit. *Id.* The plaintiff's family was verbally harassed and asked if they were bringing drugs into the facility. *Id.* Following the visit, the plaintiff was required to undergo a strip search in a manner he believed violated prison directives. *Id.*

On March 11, 2019, the defendants began listening to the plaintiff's phone conversations. *Id.* ¶ 3. At the conclusion of their investigation, the defendants, without any physical evidence, accused the plaintiff of conspiring to bring narcotics into the facility though his active visitors. *Id.* The defendants escorted the plaintiff to the lobby where he was interviewed by Lieutenant Quellete. *Id.* The plaintiff was threatened with restrictive housing placement and a disciplinary charge if he did not identify inmates selling drugs in prison. *Id.* When the plaintiff denied any knowledge, defendants Quellete, Canales, Ramirez, Hinckley, Sullivan, Duggan, Crerison, Quirion, and Otero said they were the intelligence officers and had been listening to his phone calls and had information from informants. *Id.* The plaintiff was sent to restrictive housing. *Id.*

The following day, the plaintiff told a captain touring the unit that defendants Quellete, Canales, Ramirez, Hinckley, Sullivan, Duggan, Crerison, Quirion, and Otero had threatened him if he did not cooperate with them. *Id.* ¶ 4. The captain said he would look into the matter. *Id.* On March 13, 2019, defendants Canales and Sullivan brought the plaintiff to an interrogation room. *Id.* ¶ 5. They were angry that he had complained to the captain and defendant Canales said that he would ensure the plaintiff was found guilty of the disciplinary charge. *Id.*

Lieutenant Quellete, who was also present, threatened serious charges if the plaintiff did

3

not identify inmates selling drugs in the facility. *Id.* ¶ 6. He also threatened to have the state police investigate the plaintiff's family. *Id.* The plaintiff denied selling drugs or bringing drugs into the facility and asked the defendants to leave his family alone. *Id.* ¶ 7. The plaintiff was given a disciplinary report and brought back to restrictive housing. *Id.* ¶ 8. On March 14, 2019, the plaintiff was threatened with further charges and with remaining in restrictive housing if he did not plead guilty. *Id.* ¶ 9.

On March 18, 2019, the plaintiff received a disciplinary report for security risk group affiliation. *Id.* ¶ 10. The following day, he received notice that his security risk group hearing would be held on March 25, 2019. *Id.* ¶ 12. Also on March 19, 2019, the plaintiff wrote to the warden complaining that he was being charged with security risk group affiliation because he had objected to the sexually humiliating strip search. *Id.* ¶ 13. When the defendants toured the unit on March 21, 2019, they told the plaintiff they would ensure that he was affiliated because he liked to write to the warden and submit grievances. *Id.* ¶ 14.

The plaintiff alleges that the defendants presented false evidence at the March 25, 2019 hearing. *Id.* ¶ 15. The plaintiff practices the Santeria religion. *Id.* As part of his religion, he wears beads of certain colors. *Id.* The defendants presented pictures of the plaintiff, taken from his wife's Facebook account, showing the plaintiff wearing colored beads and argued that the beads were gang colors. *Id.* At the hearing, the plaintiff stated that knowing and speaking to gang members does not make him a gang member. *Id.* ¶ 16. He also stated that nearly all Latinos say "Bendicion" to each other with the response being "God bless you." *Id.* The plaintiff characterized it as a religious expression rather than a gang expression. *Id.*

On March 26, 2019, the defendants threatened the plaintiff with maximum sanctions,

including placement in Phase 1 of the Security Risk Group Program at a supermax facility rather than placement in Phase 3, if he did not plead guilty to the charge. *Id.* ¶ 17. The plaintiff pleaded guilty. *Id.* The following day, the plaintiff was transferred to Northern Correctional Institution, a supermax facility. *Id.* ¶ 18. The plaintiff was locked in his cell for 23 hours per day and was handcuffed and shackled whenever he left his cell. *Id.* He was denied contact visits and any programs other than the Security Risk Group Program. *Id.* He could use the phone only by request and attended recreation in a small caged yard wearing handcuffs and shackles. *Id.*

II.     Analysis

The plaintiff asserts the following claims: (1) defendants Quellete, Canales, Hinckley, Duggan, Sullivan, Crerison, Quirion, and Ramirez violated his Fourteenth Amendment rights by discriminating against and harassed him because of his race; (2) defendants Quellete, Canales, Duggan, Sullivan, Crerison, Quirion, Hinckley, and Ramirez violated his Fourth Amendment rights by conducting a sexually demeaning strip search; (3) defendant Quellete "created" the strip search[2]; (4) the defendants retaliated against him for making complaints and filing grievances by placing him on Security Risk Group status and housing him under restrictive conditions; (5) the defendants violated his right to procedural due process by failing to present all evidence at the hearing; (6) defendants Quellete, Canales, Ramirez, Hinckley, Duggan, Sullivan, Crerison, Quirion, and Otero retaliated against him by issuing a disciplinary report in response to his complaints to the captain; and (7) defendant Perez violated his Fourteenth Amendment right

---

[2] Although the plaintiff states that Lieutenant Quellete created the strip search, he is not a high ranking official and cannot create new policy. The Court assumes that the plaintiff is alleging that Lieutenant Quellete ordered the strip search and decided on its form.

to due process by failing to present evidence at the hearing.

### A. Fourteenth Amendment Discrimination Claims

The plaintiff alleges that defendants Quellete, Canales, Hinckley, Duggan, Sullivan, Crerison, Quirion, and Ramirez discriminated against him because he is Latino. He states that they commenced an investigation and harassed him because he is Latino and "hang[s] around" with Latino inmates. ECF No. 1 ¶ 21. The Court construes this Fourteenth Amendment claim as a violation of the plaintiff's right to equal protection of the laws.

"'To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)). The plaintiff alleges that the defendants watched and investigated him because the inmates he was associating with were security risk group members. But elsewhere he alleges that the defendants investigated him because "[he] hang[s] around [L]atinos." ECF No. 1 ¶ 21; see also ECF No. 1 ¶ 21 (alleging that defendants said "we know your Latino friends are gang member[s] and we are watching you.") Thus, although the factual allegations supporting the racial discrimination claim are thin, the Court will allow this claim to proceed for further development.

### B. Fourth Amendment Strip Search Claims

In his second and third claims, the plaintiff challenges the strip search following his family visit. The plaintiff was required to bend and spread his buttocks and move his genitalia. "The Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, the Second

Circuit recognizes a limited Fourth Amendment right to bodily privacy for prisoners. *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citing *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992)).

When considering a Fourth Amendment claim where, as here, the challenge is to one isolated search, the court applies the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). *Harris,* 818 F.3d at 58. The court balances "the need for the particular search again the invasion of personal rights that the search entails. Courts must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Id.*

In *Bell*, the Supreme Court held that the same search the plaintiff describes, a naked prisoner bending at the waist and spreading his buttocks, did not violate the Fourth Amendment, but was a "reasonable response[] by [detention facility] officials to legitimate security concerns." *Bell*, 441 U.S. at 558-61. The plaintiff does not allege that the search was conducted in an improper manner or place. Although the plaintiff contends that the search violates Administrative Directive 6.7, he does not specify how the policy was violated and, in any event, violation of state policies do not establish a violation of the Fourth Amendment,
Thus, the plaintiff cannot meet the first, second, and fourth *Bell* factors.

However, there is an issue regarding the third factor, whether the search was justified. Where an inmate is suspected of concealing contraband, correctional officials must have reasonable suspicion and document that suspicion on the Strip Search Report form. If reasonable suspicion is not established, the inmate cannot be strip-searched. *See* Directive 6.7, section 5(c)(ii). The plaintiff alleges that the defendants acted in response to his refusal to name inmates selling drugs in the facility. As there is a question whether the search was warranted, the Court

7

will permit the claim to proceed for further development of the record. *See Harris*, 818 F.3d at 61 ("Without record evidence supporting the officer's justification, courts will have difficulty assessing whether the officer had an objectively reasonable basis for conducting the search.").

  C. <u>First Amendment Retaliation Claims</u>

  The plaintiff argues in his fourth and sixth claims that the defendants retaliated against him for complaining to supervisors and filing grievances.

  To state a cognizable First Amendment retaliation claim, the plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93-94. "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), *as recognized by Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts consider the circumstances of the particular case when evaluating the second element. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)). The Second Circuit has cautioned district courts to approach prisoner claims of retaliation "with

skepticism and particular care" as "virtually any adverse action taken against a prisoner by a prison official—even those not otherwise rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). A prisoner pursuing a retaliation claim may not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan*, 794 F.3d at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

The plaintiff's two retaliation claims are based on his verbal complaints to supervisors and grievances. Filing grievances is protected activity that satisfies the first element. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). This activity has been extended to include making oral complaints to prison officials. *Brewer v. Kamas*, 533 F. Supp. 2d 318, 328 (W.D.N.Y. 2008) (citing *Smith v. Woods*, 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006), *aff'd*, 219 F. App'x 110 (2d Cir. 2017)). Thus, the plaintiff satisfies the first element.

In his first retaliation claim, the plaintiff alleges that the defendants classified him as a security risk group member and confined him in restrictive housing with loss of privileges such as contact visits and certain jobs. But the plaintiff pleaded guilty to the charge of security risk group affiliation. Thus, even if the charge was motivated by retaliation, the plaintiff can assert no challenge to the charge. *See Reid v. Doe*, No. 95-CV-1144(RSP/GJD), 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997) (explaining that because prisoner pleaded guilty to disciplinary charge, there can be no constitutional violation based on the charge, even if the charge was motivated in part by retaliation). The first retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In the second retaliation claim, he alleges that defendants Quellete, Canales, Ramirez, Hinckley, Duggan, Sullivan, Crerison, Quirion, and Otero issued the disciplinary report for conspiring to convey narcotics. As a result of his guilty plea, the plaintiff was sanctioned with seven days confinement in punitive segregation, thirty days loss of phone, thirty days loss of commissary, and forfeiture of fifteen days RREC. The loss of RREC affects the overall duration of the plaintiff's confinement. When "a prisoner's challenge either to the process or the result of a prison disciplinary proceeding necessarily implies the invalidity of a sanction that affects the duration of his sentence, such as the deprivation of good-time credits, the prisoner may not maintain an action under § 1983 unless he has shown that the sanction ... ha[s] been overturned through administrative channels or by a state or federal court." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006). The Second Circuit has advised district courts to ascertain whether the prisoner would abandon any challenge to the loss of RREC before dismissing the case. *Id.* at 105.

However, even if the plaintiff waived any challenge to the sanction affecting the duration of his confinement, he pleaded guilty to the charge. Thus, as explained above, his claim is barred. The second retaliation claim also is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

        D.        <u>Fourteenth Amendment Due Process Claims</u>

The plaintiff argues in his fifth and seventh claims that his security risk group hearing violated his Fourteenth Amendment due process right to a fair hearing because all evidence was not presented at the hearing. The plaintiff alleges that he received a disciplinary report for security risk group affiliation. He attended a hearing and pleaded guilty the following day.

Because he pleaded guilty, the plaintiff cannot state a plausible Fourteenth Amendment procedural due process claim based on the hearing. *See Trimmier v. Cook*, No. 3:20-cv-396(KAD), 2020 WL 5231300, at *3 (D. Conn. Sept. 2, 2020) (plaintiff cannot state plausible procedural due process claim based on disciplinary hearing where he pled guilty to the charge); *see also Coleman v. Sutton*, 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (plaintiff's plea of guilty to the charges in disciplinary report "defeats any claim based on issuance of the report"), *aff'd,* 355 F. App'x 566 (2d Cir. 2009). Accordingly, the plaintiff's procedural due process claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III. Conclusion

The Fourteenth Amendment due process claims and the First Amendment retaliation claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed on the Fourteenth Amendment discrimination and the Fourth Amendment search claims against defendants Quellete, Canales, Duggan, Sullivan, Crerison, Quirion, Hinckley, and Ramirez in their individual and official capacities.

The Clerk is directed to add Officer Quirion as a defendant in this case.

The Court enters the following additional orders:

(1) As the plaintiff paid the filing fee to commence this action, he is directed to effect service of the Complaint and this Order on defendants Quellete, Canales, Duggan, Sullivan, Crerison, Quirion, Hinckley, and Ramirez in accordance with Federal Rule of Civil Procedure 4 and file a return of service within **ninety (90) days** of the date of this order. Failure to do so will result in the dismissal of this action as to any defendant who has not been served. Plaintiff shall file a notice indicating the date on which he mailed the notice of lawsuit and waiver of service of

11

summons forms to the defendants and shall file the waiver of service of summons forms when he receives them. If any defendant fails to return a signed waiver of service of summons form, the plaintiff shall arrange for in-person service on that defendant in accordance with Federal Rule of Civil Procedure 4.

(2) **The Clerk shall** send the plaintiff a copy of this Order, instructions on effecting service, eight notice of lawsuit forms and eight waiver of service of summons forms.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in

the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 23rd day of June 2021 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge