UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICARDO MORENO,<br>    Plaintiff,<br><br>v.<br><br>OUELLETTE,[1] et al.<br>    Defendants. | CASE NO. 3:21-cv-783 (MPS)<br><br><br><br>DECEMBER 13, 2022 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

The plaintiff, Ricardo Moreno, filed this action against Department of Correction officials asserting claims for violation of his constitutional rights.  Following initial review, the only claims remaining are a Fourteenth Amendment equal protection claim and a Fourth Amendment strip search claim against defendants Lieutenant Ouellette and Officers Canales, Crevison, Duggan, Hinckley, Quirion, Ramirez, and Sullivan.  *See* Initial Review Order, ECF No. 5.  The defendants have filed a motion for summary judgment asserting, among other things, that the plaintiff failed to exhaust his administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act.  Although plaintiff was granted a ninety-day extension of time to respond to the motion, he has not done so.  Because I agree that the plaintiff failed to exhaust his administrative remedies, I grant the defendants' motion.

---

[1] Although he attaches documents to his Complaint with the correct spelling, the plaintiff incorrectly names Lieutenant Ouellette as Lieutenant Quellette in the Complaint.  The Court used the correct spelling.  The Clerk is instructed to correct the court docket.

## II. Standard

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia*

*Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**III.     Facts**[2]

The plaintiff's claims are based on events that occurred in 2019 while the plaintiff was confined at Carl Robinson Correctional Institution ("Robinson"). Defs.' Local Rule 56(a)1 Statement, ECF No. 33-2, ¶ 1. The plaintiff was confined at Robinson from January 14, 2019, until he was transferred to MacDougall-Walker Correctional Institution ("MacDougall") on March 27, 2019. *Id.* ¶ 2. The defendants were employed at Robinson in 2019. *Id.* ¶ 3.

Since 2018, Lieutenant Ouellette has served as the Facility Intelligence Coordinator at Robinson. *Id.* ¶ 4. He is responsible for conducting investigations into safety and security risks at Robinson and also for collecting, developing, and organizing intelligence at the facility. *Id.* ¶ 5. Lieutenant Ouellette oversees the Robinson Intel Unit and the officers assigned to that unit. *Id.* ¶ 6.

The officers in the unit gather information and intelligence by monitoring and reviewing inmate phone calls and mail, monitoring and tracking incidents in the facility, gathering information from inmates and other sources, and observing inmates and inmate interactions. *Id.*

---

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
    Although the defendants informed the plaintiff of this requirement, *see* ECF No. 33-3, the plaintiff has not filed a Local Rule 56(a)2 Statement. Accordingly, the defendants' statements not contradicted by admissible evidence of record are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

¶ 7.  The officers use this information to identify, monitor, and investigate potential safety and security threats to the facility, staff, or public.  *Id.* ¶ 8.

In 2019, Officers Canales and Ramirez were members of the Robinson Intel Unit and served as phone monitors.  *Id.* ¶ 9.  In 2019, Officer Hinckley was not a member of the Robinson Intel Unit.  *Id.* ¶ 11.  However, as a disciplinary investigator, Officer Hinckley occasionally assisted the Robinson Intel Unit in gathering information.  *Id.*  In 2019, Officers Crevison, Duggan, Quirion, and Sullivan were not members of the Robinson Intel Unit and would not have been involved in any investigations conducted by the Unit.  *Id.* ¶ 12.

In 2019, the plaintiff was the subject of two investigations conducted by the Robinson Intel Unit, one relating to his suspected association with the Security Risk Group ("SRG") Latin Kings, the other relating to his suspected involvement in conspiring to bring contraband into the facility.  *Id.* ¶ 15.

Shortly after he arrived at Robinson, intelligence staff observed the plaintiff showing leadership within his housing unit and associating with known members of the Latin Kings.  *Id.* ¶16.  The Robinson Intel Unit, including Lieutenant Ouellette and Officer Canales, gathered information regarding the plaintiff's involvement with the Latin Kings.  *Id.* ¶ 17.  The information included the use of Latin King identifiers in plaintiff's phone calls and the use of Latin King colors and identifiers in photographs and video footage posted on social media connected to the plaintiff.  *Id.*  Information also was obtained through observations of the plaintiff, inmate interviews, and review of incidents in the housing unit.  *Id.* ¶ 18.  The Robinson Intel Unit forwarded the information to the Department of Correction Security Division and SRG

4

Coordinator for a determination whether the plaintiff should be designated a Latin Kings member and placed in the SRG Program. *Id.* ¶ 19.

On March 18, 2019, the plaintiff was issued a disciplinary report on the charge of SRG affiliation. *Id.* ¶ 20. On March 26, 2019, the plaintiff pled guilty to the charge and was designated an SRG member. *Id.* ¶ 21. Defendants Crevison, Duggan, Hinckley, Quirion, Ramirez, and Sullivan were not involved in the SRG investigation. *Id.* ¶ 22.

The Robinson Intel Unit also received information that the plaintiff might be involved in conveying contraband into the facility. *Id.* ¶ 24. The Robinson Intel Unit, including Officer Canales, began reviewing the plaintiff's phone calls and mail for information concerning his possible involvement. *Id.* Several calls were identified where the plaintiff was heard discussing, in code, having contraband brought into the facility through visitors. *Id.* ¶ 25. The contraband was suspected to be Suboxone. *Id.*

The Robinson Intel Unit also discovered that another inmate at Robinson had made payments of $150.00 to the plaintiff through a friend on separate occasions in February 2019. *Id.* ¶ 27. After receiving this information, Officer Canales reviewed the phone calls of the second inmate. *Id.* ¶ 28. This review supported the plaintiff's involvement as the second inmate was recorded giving his friend the plaintiff's inmate number to identify him as the person to whom the $150.00 payment should be sent. *Id.* The second inmate was given a urinalysis test which was positive for Suboxone. *Id.* ¶ 29.

On March 11, 2019, the plaintiff was issued a disciplinary report for conspiracy to convey contraband. *Id.* ¶ 30. On March 14, 2019, the plaintiff pled guilty to the charge. *Id.* ¶ 31. Defendants Crevison, Duggan, Hinckley, Quirion, Ramirez, and Sullivan were not involved

in the investigation into the plaintiff's suspected involvement in conveying contraband into the facility. *Id.* ¶ 32.

The plaintiff also contends that, following a family visit at Robinson on March 9, 2019, he was subjected to an unjustified and "sexually humiliating, demeaning strip search." *Id.* ¶ 34. Defendants Ouellette, Canales, Crevison, Hinckley, Ramirez, and Sullivan were not working at Robinson on Saturday, March 9, 2019. *Id.* ¶ 36. Defendant Duggan was assigned to the Robinson restrictive housing unit on Saturday, March 9, 2019. *Id.* ¶ 38. Defendant Quirion was assigned to the Recreation #2 post on Saturday, March 9, 2019, so he was either in the recreation yard or gym depending on the weather that day. *Id.* ¶ 39. Neither officer was stationed in the area where visits occurred on March 9, 2019. *Id.* ¶ 40.

Department of Correction Administrative Remedies Directive 9.6 requires that the plaintiff file a grievance within thirty calendar days after the occurrence or the discovery of the cause of the grievance. *Id.* ¶ 46. The plaintiff was aware of his claims regarding the Robinson Intel Unit investigations no later than March 27, 2019. *Id.* ¶ 50. He was aware of his claim regarding the strip search no later than March 9, 2019. *Id.* ¶ 52. Between January 1, 2019, and April 26, 2019, the plaintiff was confined at Robinson and MacDougall. *Id.* ¶ 55. Administrative remedies records at both facilities show that the plaintiff did not file any grievances during this period. *Id.* ¶¶ 56-57.

**IV.     Discussion**

The defendants move for summary judgment on three grounds: (1) the plaintiff failed to exhaust his administrative remedies on any claim before commencing this action, (2) no reasonable juror could find for the plaintiff on his Fourteenth or Fourth Amendment claims, and

6

(3) the defendants are protected by qualified immunity. As I conclude below that the plaintiff failed to exhaust his administrative remedies, I address only the first ground.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters

sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him under *Ross*. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

The general inmate grievance procedure is set forth in Administrative Directive 9.6. *See* Defs.' Mot. Ex. F, ECF No. 33-9 (version of Directive 9.6 in effect at the time of the underlying incidents). An inmate must first attempt to resolve the matter informally. Dir. 9.6(6)(A). If attempts to resolve the matter informally are not effective, the inmate must make a written

8

request using a specified form and send the form to the appropriate staff member or supervisor. *Id.* If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance. Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(I). The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form. Dir. 9.6(6)(J). Administrative Directive 9.6 provides further procedures for the appeal of a denial of a Level 1 grievance, but those procedures are not material in this case.

There are two remaining claims, a Fourteenth Amendment equal protection or discrimination claim and a Fourth Amendment strip search claim. The plaintiff's Fourteenth Amendment claim is based on the two investigations by the Robinson Intel Unit. The plaintiff pleaded guilty to charges resulting from both investigations. He entered the guilty pleas on March 14, 2019, and March 26, 2019. Thus, by March 27, 2019, the plaintiff was aware of the claim and had thirty calendar days, or until April 26, 2019, to file a grievance. The strip search occurred on March 9, 2019. The plaintiff was immediately aware of the alleged improprieties with the search. Thus, he had until April 8, 2019, to file a grievance regarding the strip search.

The defendants have submitted Declarations from Jessica Bennett, the Administrative Remedies Coordinator at MacDougall, Defs.' Mem. Ex. E, ECF No. 33-8, and Christopher

Nothe, the Administrative Remedies Coordinator at Robinson, Defs.' Mem. Ex. G, ECF No. 33-10.  They state that administrative remedy records show that the plaintiff did not file any grievances at Robinson from January 1, 2019, to May 1, 2019, or at MacDougall from March 1, 2019, to May 1, 2019.

In response to this evidence showing failure to exhaust administrative remedies, the plaintiff is required to show either that administrative remedies were not available to him or that he did exhaust his administrative remedies.  The plaintiff has not done so.  Although he was afforded an additional ninety days to respond to the motion for summary judgment, he has elected not to respond.  Accordingly, the defendants' motion for summary judgment is granted on the ground that the plaintiff failed to exhaust his administrative remedies on any of the remaining claims.

## V.     Conclusion

The defendants' motion for summary judgment [**ECF No. 33**] is **GRANTED.**  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 13th day of December 2022 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge